Case 4:19-cv-04427   Document 54   Filed on 03/09/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
March 09, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK ALVA WEST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-4427 |
| | § | |
| JACKSON NATIONAL LIFE | § | |
| INSURANCE, *et al*, | § | |
| | § | |
| Defendants. | | |

## AMENDED MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendant Jackson National Life Insurance's ("Jackson National") Motion for Summary Judgment. (Dkt. 32) After carefully reviewing the motion, response, reply, applicable law, and the entire record, the motion is **GRANTED.**

I.   **FACTUAL BACKGROUND**

This case arises from a dispute that has been resolved between Jackson National, an insurer, and Shelby Ranly ("Ranly"), its insured, regarding coverage and payment for long term care benefits. Plaintiff Mark Alva West ("West"), proceeding pro se, has brought this action against Jackson National for tortious interference of contract under Texas state law. In support of this claim, West alleges that he had a contract with Ranly to serve as her "independent caregiver" that she terminated because of the unlawful claim coverage and payment decisions made by Jackson National and a settlement agreement entered into between Jackson National and Ranly. There is only one cause of action

asserted in this lawsuit—tortious interference with a contract— and the material facts of this case are very straightforward. The summary judgment record consists of only three documents—the insurance policy issued by Jackson National to Ranly, a summary of the "verbal" services agreement between Ranly and West, and the sworn declaration of Roy Christenson, a claims consultant who works for the administrator of the policy, establishing the material facts regarding the conduct of the parties in this case.[1]

### A. The Policy

In 2002, Jackson National issued a long-term care insurance policy to Ranly (the "Policy"). (Dkt. 32-1 at pp. 10–28) Under the Policy, Jackson National pays the insured benefits for Long Term Care (among other things), which includes caregiving services provided in the insured's home by an "Independent Caregiver" as this term is defined in the Policy. In addition to meeting these minimum requirements, the Policy states that an Independent Caregiver "can be anyone [the insured] choose[s] other than a member of [the insured's] immediate family living with [the insured]."[2] (Dkt. 32-1 at p. 19)

Before Jackson National will disburse benefits for care or services rendered by an Independent Caregiver, a Care Manager approved by Jackson National "must approve the Independent Caregiver." The Policy provides that benefits will not be paid without such approval. (Dkt. 32-1 at p. 16)

---

[1] West does not provide any sworn testimony as summary evidence in opposition to this motion.
[2] The Policy also defines "Informal Caregiver[s]," which may be a person who has the primary responsibility of caring for the Insured in the Insured's home but is not paid for those services. (Dkt. 32-1 at p. 16)

The Policy "is a legal binding contract" between Jackson National and the Insured. No part of the Policy can be changed or waived "unless the change is approved in writing on the policy" by Jackson National. (Dkt. 32-1 at p. 27)

### B. Ranly's Initial Claim for Benefits and Her Contract with West

Ranly asserted a claim under the Policy and collected benefits based upon timesheets for two caregivers. In late 2016, Jackson National began an investigation into whether the timesheets were valid. (Dkt. 32-1 at para. 4) Around the same time, Ranly and West entered into a "verbal contract of employment" for West to serve as a third caregiver for Ranly in addition to the two caregivers for whom Ranly was already receiving benefits. (Dkt. 32-2 at p.2)

In November 2016, Ranly requested to have West approved under the Policy as an Independent Caregiver. As part of that application, Ranly submitted an Independent Caregiver Personal and Professional History Form, to be completed by the caregiver. (Dkt. 32-1 at p. 46) On the form, West checked boxes stating that he was not related to the insured and did not live with the insured: (Dkt. 32-1 at p. 46) West also provided a copy of his driver's license but concealed the portion of his driver's license that showed his address in the copy he provided to Jackson National. (Dkt. 32-1 at p. 47)

Relying on the representation that West and Ranly were not related and did not live together, Jackson National approved West as an Independent Caregiver as defined by the language of the Policy and began reimbursements to Ranly for West's caregiving services. (Dkt. 32-1 at para. 6) However, contrary to the representations made by West to the insurance company. West and Ranly were married at the time. (Dkt. 32-2 at p.6)

### B. Jackson National's Withdrawal of the Approval and the Subsequent Settlement Agreement with Ranly

In late 2016, a dispute arose between Jackson National and Ranly concerning the accuracy of timesheets that Ranly had submitted for benefit payments for her caregivers. During its investigation of that dispute, Jackson National discovered that West was in fact married to Ranly, despite his prior representations to the contrary on his Independent Caregiver Personal and Professional History form.[3] Jackson also resided and currently resides with Ranly at her home at 2826 Westerland Drive, Houston, TX 77068—the same address that he continues to use as a mailing address, including in this action. Jackson National notified Ranly that West "does not and cannot qualify as an "Independent Caregiver" as defined by the Policy and that its prior approval of West as a caregiver was withdrawn. (Dkt. 32-1 at p. 51–52)

Subsequently, Jackson National withheld future benefit payments for West's services to offset amounts already paid in reliance on West's statements that he was not married to Ranly. Jackson National and Ranly eventually resolved their dispute with an agreement that Jackson National would repay certain withheld benefits, in exchange for a mutual release of all claims, and the parties' mutual agreement that Ranly would not request approval of West as a caregiver from the date of the settlement until April 1, 2021. (Dkt. 32-1 at pp. 56–59)

---

[3] West has stipulated in this action that he is currently married to Ranly and was married to Ranly at the time he provided his submission to be approved as an Independent Caregiver. (Dkt. 32-2 at p. 6)

Subsequently, West filed this action for tortious interference against Jackson National. He contends that 1) Jackson National's interpretation of the Policy language regarding coverage and decision not to pay for his services to Ranly and 2) the conditions of its settlement with Ranly, constitute "willful and intentional interference" with West's services contract with Ranly. Specifically, West alleges that Jackson National's interpretation of the term "Independent Care Giver" in the Policy is incorrect, not "logical" and is evidence of "egregious behavior" by Jackson National. (Dkt. 23 at p. 3) West seeks "lost wages," which consist of reimbursement payments which West claims Jackson National should have paid to Ranly for West's caregiving services.

In response, Jackson National filed the pending motion seeking judgment in its favor asserting, among other things, the affirmative defense of legal justification as a bar to this action. Specifically, Jackson National asserts that it cannot be sued for tortious interference with West's contract because it had a legal right to interpret the Policy language regarding coverage, to decide whether to pay or not pay claims from its insured, Ranly, and to enter into a settlement agreement with Ranly based on its interpretations. For the reasons set forth in greater detail below, the Court finds that Jackson National is entitled to summary judgment in this action based on the affirmative defense of legal justification.

## II.  APPLICABLE LAW

### Summary Judgment Standard

Under Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A fact is material if "its resolution could affect the outcome of the action." *Nunley v. City of Waco*, 440 F. App'x 275, 277 (5th Cir. 2011). The court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). If the movant produces evidence that tends to show that there is no dispute of material fact, the nonmovant must then identify evidence in the record sufficient to establish the dispute of material fact for trial. *Celotex*, 477 U.S. at 321–23.

The nonmovant must "go beyond the pleadings and by her own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertion, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, L.L.C.*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

III.   ANALYSIS

**Jackson National is Entitled to Summary Judgment Regarding West's Claim for Tortious Interference**

The Court finds that the Jackson National has a legal right as a matter of law to engage in the actions that West argues constitute tortious interference with his contract with Ranly. A party alleging tortious interference with a contract must prove the following four elements to sustain a claim: (1) a contract subject to interference exists; (2) the alleged act of interference was willful and intentional; (3) the willful and intentional act proximately caused damage; and (4) actual damage or loss occurred. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *Anthony Pools v. Charles & David, Inc.*, 797 S.W.2d 666, 668 (Tex. App.-- Houston [14th Dist.] 1990, writ denied). The Texas Supreme Court has held that legal justification is an affirmative defense to claims of tortious interference with a contract. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996); *Landry's Seafood Restaurants, Inc. v. Waterfront Café, Inc.*, 49 S.W.3d 544, 547 (Tex. App.—Austin 2001, pet. dism'd); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996).

Justification is based on either the exercise of (1) one's own legal rights, or (2) a good faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken and, even though the defendant may harbor ill will toward the plaintiff. *Tex.*

*Beef*, 921 S.W.2d at 211. Consequently, if the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense. If this happens, motivation is irrelevant. *Id.* A jury question is presented only when the court decides that no legal right to interfere exists, but the defendant has nevertheless produced evidence of a good faith, albeit mistaken, belief in a colorable legal right. *Id.* Malice, ill will, or motivation are not relevant factors in determining justification if the defendant acts to assert a legal right. *Id.; Calvillo*, 922 S.W.2d at 929.

Here, there is no material issue of fact to be decided by a jury. Jackson National is entitled to the defense of justification as a matter of law because it has a legal right to interpret the Policy to deny coverage and payment of Ranly claims for West's services. *Fin. Review Servs., Inc. v. Prudential Ins. Co. of Am.*, 50 S.W.3d 495, 504 (Tex. App.—Houston [14th Dist.] 1998), *aff'd* 29 S.W.3d 74 (Tex. 2000). Likewise, Jackson National has a legal right to settle disputes with its insured Ranly based on its interpretation of the Policy to deny coverage and payment of Ranly's claims for West's services. Furthermore, West cannot, as a matter of law, bring an action, no matter how it is styled, challenging the basis for Jackson's denial of coverage and payment of Ranly's claims. As Texas courts have held "[t]his is because there is no third-party cause of action in Texas for bad faith denial of an insurance claim." *Id.* (citing *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 279 (Tex. 1995); *Maryland Ins. Co. v. Head Indus. Coatings & Services, Inc.*, 938 S.W.2d 27 (Tex. 1996) (holding that an insurer owes no duty of good faith and

fair dealing to investigate claims by a third party)). Texas courts have specifically held that if a third party has no legal right to require an insurer to cover and pay its insured's claims, then the third party also cannot sue the insurer for tortious interference with a contract based on allegations that the insurer unlawfully denied coverage and payment of bills generated by the insured for the insured's care. *Fin. Review Servs.*, 50 S.W.3d at 504. The Fifth Circuit has also reached this conclusion, holding that a bad faith insurance claim brought by a third party cannot be recast as a tortious interference claim. *See Tacon Mechanical Contractors, Inc. v. Aetna Cas. & Sur. Co.*, 65 F.3d 486, 488 (5th Cir. 1995). To recognize West's tortious interference claim based on Jackson National's failure to cover and pay insurance claims would effectively circumvent Texas law to permit bad faith insurance claims by third parties such as West. This the Court will not do. Accordingly, the Court finds that the affirmative defense of legal justification entitles Jackson National to judgment in this action.

## CONCLUSION

For the reasons discussed above, the motion for summary judgment is **GRANTED.** All remaining motions in this case are **DENIED** as moot.

SIGNED at Houston, Texas, this 9th day of March, 2021.

_George C. Hanks Jr._
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE